IN THE

# United States Court of Appeals for the District of Columbia Circuit

PUBLIC EMPLOYEES FOR ENVIRONMENTAL RESPONSIBILITY, ET AL.,

*Plaintiffs-Appellants,*

v.

JAMES PAYNE, et al.,

*Defendants-Appellees.*

On Appeal from the United States District Court
for the District of Columbia, No. 24-cv-2194
(Before James E. Boasberg, C.J.)

## INHANCE TECHNOLOGIES LLC'S MOTION TO INTERVENE

J. TOM BOER
HOGAN LOVELLS US LLP
4 Embarcadero Center, Suite 3500
San Francisco, CA 94111
(415) 274-2300
tom.boer@hoganlovells.com

CATHERINE E. STETSON
SUSAN M. COOK
MARLAN GOLDEN
HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.
Washington, D.C. 20004
(202) 637-5491
cate.stetson@hoganlovells.com

*Counsel for Inhance Technologies LLC*

January 24, 2025

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................. ii

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES ......................................................................................................... iv

GLOSSARY ........................................................................................................ vi

INTRODUCTION ............................................................................................... 1

BACKGROUND ................................................................................................. 2

ARGUMENT ...................................................................................................... 6

   I.     INHANCE IS ENTITLED TO INTERVENE ........................................... 7

        A. Inhance's Motion To Intervene Is Timely ......................... 7

        B. Inhance Has A Legally Protected Interest In The Action ................... 9

        C. This Action Threatens To Impair Inhance's Protected Interest ........................................................................................ 11

        D. Inhance's Interest Is Not Adequately Represented By Existing Parties .............................................................................. 12

  II.    INHANCE HAS STANDING TO INTERVENE ..................................... 14

 III.   INHANCE SATISFIES THE CRITERIA FOR PERMISSIVE INTERVENTION ..................................................................................... 15

CONCLUSION ................................................................................................... 17

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

Page(s)

**Cases:**

*100Reporters LLC v. United States Dep't of Just.*,
307 F.R.D. 269 (D.D.C. 2014) .................................................... 16

*Advocates for Highway & Auto Safety v. Federal Motor Carrier Safety Admin.*,
41 F.4th 586 (D.C. Cir. 2022) ............................................... 14, 15

*Akiachak Native Cmty. v. United States Dep't of Interior*,
584 F. Supp. 2d 1 (D.D.C. 2008) ................................................. 11

*Ascendium Educ. Sols., Inc. v. Cardona*,
78 F.4th 470 (D.C. Cir. 2023) .................................................... 15

*Cameron v. EMW Women's Surgical Ctr., P.S.C.*,
595 U.S. 267 (2022) ................................................................. 7

*Crossroads Grassroots Pol'y Strategies v. Federal Election Comm'n*,
788 F.3d 312 (D.C. Cir. 2015) ......................................... 10, 11, 13

*Dimond v. District of Columbia*,
792 F.2d 179 (D.C. Cir. 1986) .................................................... 13

*District of Columbia v. Potomac Elec. Power Co.*,
826 F. Supp. 2d 227 (D.D.C. 2011) ............................................. 12

*EEOC v. National Children's Ctr., Inc.*,
146 F.3d 1042 (D.C. Cir. 1998) .................................................. 16

*Electronic Priv. Info. Ctr. v. FTC*,
No. 18-942 (TJK), 2019 WL 11307643 (D.D.C. Aug. 28, 2019) ................... 17

*Foster v. Gueory*,
655 F.2d 1319 (D.C. Cir. 1981) .................................................. 10

*Fund for Animals, Inc. v. Norton*,
322 F.3d 728 (D.C. Cir. 2003) ......................... 8, 10, 11, 12, 13, 15

*In re Brewer*,
863 F.3d 861 (D.C. Cir. 2017) ..................................................... 7

*International Union, United Auto. Aerospace & Agr. Implement Workers of Am.
AFL-CIO, Local 283 v. Scofield*,
382 U.S. 205 (2022) ................................................................. 7

\* Authorities upon which we chiefly rely are marked with an asterisk.

*Karsner v. Lothian*,
    532 F.3d 876 (D.C. Cir. 2008) ........................................................ 7

*Military Toxics Project v. EPA*,
    146 F.3d 948 (D.C. Cir. 1988) ...................................................... 11

*Natural Res. Def. Council v. Costle*,
    561 F.2d 904 (D.C. Cir. 1977) ...................................................... 12

*Sault Ste. Marie Tribe of Chippewa Indians v. Bernhardt*,
    331 F.R.D. 5 (D.D.C. 2019) .......................................................... 11

*SEC v. Prudential Sec. Inc.*,
    136 F.3d 153 (D.C. Cir. 1998) ........................................................ 9

*Sierra Club v. McCarthy*,
    308 F.R.D. 9 (D.D.C. 2015) .......................................................... 17

*Trbovich v. United Mine Workers of Am.*,
    404 U.S. 528 (1972) ...................................................................... 12

*United States v. All Assets Held at Credit Suisse (Guernsey) Ltd.*,
    45 F.4th 426 (D.C. Cir. 2022) ........................................................ 7

*United States House of Representatives v. Price*,
    No. 16-5202 (D.C. Cir. Aug. 1, 2017) ........................................... 8

*Utahns for Better Transp. v. United States Dep't of Transp.*,
    295 F.3d 1111 (10th Cir. 2002) .................................................... 11

*Waterkeeper All., Inc. v. Wheeler*,
    330 F.R.D. 1 (D.D.C. 2018) .......................................................... 10

*Wildearth Guardians v. Salazar*,
    272 F.R.D. 4 (D.D.C. 2010) .................................................... 9, 14

*Yocha Dehe v. United States Department of the Interior*,
    3 F.4th 427 (D.C. Cir. 2021) ........................................................ 14

**Rules:**

Fed. R. App. P. 15 .................................................................................. 8

*Fed. R. Civ. P. 24 ................................................. 9, 10, 14, 15, 16

**Other Authorities:**

67 Fed. Reg. 68,242, 68,289 (Nov. 8, 2002) ....................................... 2

*Certain PFAS Risk Management Under the TSCA; Request for Comment*,
    89 Fed. Reg. 79,581 (Sept. 30, 2024) ......................................... 13

# CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to Circuit Rule 28(a)(1), Inhance Technologies LLC certifies that:

## A. PARTIES

1. The following are parties in this Court:

   a. <u>Plaintiff-Appellants</u>: Public Employees for Environmental Responsibility and Center for Environmental Health

   b. <u>Defendant-Appellees</u>: James Payne, as Acting Administrator of the Environmental Protection Agency, and the Environmental Protection Agency

   c. <u>Proposed Intervenor-Appellee</u>: Inhance Technologies LLC

2. For purposes of Federal Rule of Appellate Procedure 26.1 and Circuit Rule 26.1, there are no parent companies, subsidiaries, affiliates, or companies which own at least 10% of the stock of Inhance Technologies LLC which have any outstanding securities in the hands of the public.

## B. RULINGS UNDER REVIEW

Plaintiff-Appellants appeal an order and memorandum opinion issued on December 11, 2024, by Chief Judge James Boasberg, ECF Nos. 32, 33, *Public Emps. for Env't Resp. v. Regan*, No. CV 24-2194 (JEB), 2024 WL 5075828 (D.D.C. Dec. 11, 2024). This order and opinion granted Defendant-Appellees' Motion to Dismiss

(ECF No. 14) and denied Proposed Intervenor Inhance's Motion to Intervene (ECF No. 11) as moot.

## C.   RELATED CASES

Inhance's appeal of the District Court's denial of its intervention motion is a related case under Circuit Rule 28(a)(1)(C).

*/s/ Catherine E. Stetson*
Catherine E. Stetson

*Counsel for Inhance Technologies LLC*

# GLOSSARY

EPA                    Environmental Protection Agency

FOIA                   Freedom of Information Act

PFAS                   Per- and polyfluoroalkyl substances

PFOA                   Perfluorooctanoic acid

TSCA                   Toxic Substances Control Act

# INTRODUCTION

Appellants filed this lawsuit seeking to force the Environmental Protection Agency (EPA) to do two things: declare Inhance's fluorination process a public safety risk, and initiate a rulemaking under the Toxic Substances Control Act (TSCA) to stamp out Inhance's process. Because both of these requests are aimed squarely at Inhance, and would have a dire impact on its viability as a going concern, Inhance wishes to be heard in this appeal.

This case is the latest salvo in a long-running campaign Appellants have waged against Inhance and its fluorination process. Appellants first filed a lawsuit against Inhance in federal district court in D.C. under the citizen suit provision of TSCA Section 5, which allows the agency to regulate "significant new uses." That lawsuit was promptly dismissed under the diligent prosecution bar because EPA had already brought its own enforcement action in the Eastern District of Pennsylvania. Appellants then intervened in that enforcement case—only to hastily dismiss their claims after the Fifth Circuit ruled that EPA did not have jurisdiction to pursue Inhance under TSCA Section 5. Appellants next filed a FOIA lawsuit back in D.C. district court seeking access to Inhance's most sensitive confidential information. That lawsuit remains pending. In every one of those cases, Appellants sought to achieve the same end: ban Inhance's fluorination process, putting Inhance out of business.

This most recent action is more of the same. In the district court, Appellants sought to force the agency to [1] immediately undertake a rulemaking under TSCA Section 6 banning Inhance's fluorination process, and [2] initiate a civil action to the same effect under TSCA Section 7, which vests EPA with the discretion to initiate an action addressing an imminent hazard under certain circumstances. Inhance timely sought to intervene below, but its motion was denied as moot when the district court dismissed Appellants' claims. Inhance is thus not an automatic party to this appeal. But as the object of the regulatory action sought here, it should be.

This case—like the ones that preceded it—poses a direct threat to Inhance's ability to do business. Inhance thus seeks to intervene in order to protect its rights.

## BACKGROUND

Inhance fluorinates plastic containers using elemental fluorine. Fluorination imparts barrier properties to the plastic container, keeping volatile or dangerous substances inside and keeping the outside environment out. Inhance has been fluorinating containers for decades. Without fluorination, the packaged contents would permeate through the walls of the plastic container and into the environment. In fact, EPA has recognized the benefits conferred by fluorination, issuing standards requiring the control of emissions by permeation from polyethylene fuel tanks that recommend processes like Inhance's fluorination. 67 Fed. Reg. 68,242, 68,289 (Nov. 8, 2002) ("A specific example of technology that could be used to meet the

fuel tank permeations would be surface barrier treatments such as … fluorination. With these surface treatments, more than a 95-percent reduction in permeation emissions from new fuel tanks is feasible.").  Recently, Inhance and EPA discovered that the fluorination process can unintentionally create extremely small amounts of long-chain per- and polyfluoroalkyl substances, or PFAS, which function as impurities and provide no commercial benefit to the end product.  Upon prompting by Appellants, in March 2022, EPA served Inhance with a notice that it had violated Section 5 of TSCA by engaging in a "significant new use" by generating long-chain PFAS without seeking prior approval.

In parallel, both the Federal Government and Appellants brought separate lawsuits against Inhance under TSCA Section 5.  The Federal Government first filed an enforcement action in the Eastern District of Pennsylvania in December 2022. *United States v. Inhance Tech. LLC*, ECF No. 33, No. 5:22-cv-05055-JFM (E.D. Pa. Apr. 26, 2023).  Appellants then filed suit under the citizen suit provision of TSCA Section 5 in D.C. district court.  The Court dismissed Appellants' lawsuit pursuant to TSCA's diligent-prosecution bar. *Center for Env't Health v. Inhance Techs.*, No. CV 22-3819 (JEB), 2023 WL 2808710, at *4 (D.D.C. Apr. 6, 2023).

In December 2023, while its enforcement case was pending in the Eastern District of Pennsylvania, EPA issued two unilateral orders under TSCA Section 5. Inhance promptly appealed those orders to the Fifth Circuit, which granted the

parties' consent order staying their effective date pending judicial review. *Inhance Techs., L.L.C. v. EPA*, 96 F.4th 888, 890 (5th Cir. 2024). On the merits, the Court found that EPA had exceeded its statutory authority under TSCA Section 5 and vacated the Orders. *Id.* at 896.

Both Appellants and the Government then hastily dismissed their claims in the enforcement action in Pennsylvania. In acknowledging the dismissal, the district court noted that Appellants had brought an "unauthorized motion[] for summary judgment before the close of pleadings (much less before the close of discovery)," which the court described as an "astonishing filing includ[ing] a 50-page brief, 45 pages of the most disputed-looking 'undisputed' material facts you'll ever see, and well over 1,000 pages of appendices." *United States v. Inhance Tech. LLC*, ECF No. 103 n.1, No. 5:22-cv-05055-JFM (E.D. Pa. May 20, 2024).

In February 2024, Appellants filed a Freedom of Information Act (FOIA) case against EPA in D.C. *Public Emps. for Env't Responsibility v. EPA*, No. 1:24-cv-00445-JEB (D.D.C. Feb. 15, 2024). In that case, Appellants seek disclosure of highly confidential information that Inhance disclosed to EPA in connection with the agency's administrative proceeding, including Inhance's process-related and customer-specific information. Inhance intervened in that suit, which is continuing to play out. ECF No. 4.

Finally (or so one might hope), in July 2024, Appellants filed this action, seeking to compel EPA to take action under Sections 6 and 7 of TSCA. The Complaint specifically targeted Inhance's fluorination technology—which is why Inhance is mentioned in the Complaint more than three dozen times. Among other things, Appellants seek an order compelling EPA to "immediately propos[e] a rule under TSCA section 6(a) prohibiting the production of PFOA during the Inhance fluorination process" as well as an order requiring EPA to "immediately file an imminent hazard action under TSCA section 7 against Inhance to prohibit the formation of PFOA during the fluorination process"—or, alternatively, "make its proposed rule under section 6(a) imposing such a ban immediately effective upon publication in the Federal Register." Compl. ¶¶ 121, 133.

Inhance moved to intervene below, submitting with its intervention motion a proposed motion to dismiss. Among other things, Inhance argued that Appellants lacked standing; on the merits, Inhance explained that its fluorination process did not present either an unreasonable risk under Section 6 nor an imminent hazard under Section 7. Appellants did not oppose the intervention. After securing several extensions, the Government eventually opposed the motion. Although the Government acknowledged that Inhance timely sought to intervene, it argued that Inhance did not satisfy the other intervention factors. The Government also sought dismissal of the action, raising arguments that differed from those articulated in

Inhance's own motion-to-dismiss brief. Most principally, the Government argued that Appellants' claims were moot because the agency had taken steps to address their concerns.

The District Court granted the Government's motion to dismiss on December 11, reasoning that because EPA "published in the Federal Register a notice seeking public comment as part of its rulemaking to address the risks of PFAS production during the fluorination of plastic containers" after Appellants sued, this development "rendered moot Plaintiffs' first claim for relief." *Public Emps. for Env't Resp. v. Regan*, No. CV 24-2194 (JEB), 2024 WL 5075828, at 2, *5 (D.D.C. Dec. 11, 2024). The court also dismissed Appellants' TSCA Section 7 claim, concluding that it falls outside the terms of the TSCA's citizen-suit provision. *Id.* at *6. The Court denied Inhance's motion to intervene as moot based on its conclusion that EPA had "fulfilled any nondiscretionary duties under the TSCA." *Id.* at *1.

Appellants appealed the District Court's ruling on December 26, 2024. Inhance appealed the District Court's denial of its intervention motion on January 24, 2025.

## ARGUMENT

Because "[n]o statute or rule provides a general standard to apply in deciding whether intervention on appeal should be allowed," the Supreme Court has instructed that appellate courts "look[] elsewhere for guidance—namely, "the

'policies underlying intervention' in the district courts." *Cameron v. EMW Women's Surgical Ctr., P.S.C.*, 595 U.S. 267, 276–277 (2022) (quoting *International Union, United Auto. Aerospace & Agr. Implement Workers of Am. AFL-CIO, Local 283 v. Scofield*, 382 U.S. 205, 217 n.10 (2022)). The D.C. Circuit accordingly "appl[ies] the intervention standards of Civil Rule 24" when analyzing motions to intervene on appeal. *United States v. All Assets Held at Credit Suisse (Guernsey) Ltd.*, 45 F.4th 426, 432 (D.C. Cir. 2022).

Under the familiar standard set out in Federal Rule of Civil Procedure 24(a)(2), an application to intervene must be (1) timely brought, (2) identify a "legally protected interest" (3) that the action threatens to impair or impede, and (4) set out why no existing party adequately represents the would-be intervenor's interest. *In re Brewer*, 863 F.3d 861, 872 (D.C. Cir. 2017).

Inhance's motion satisfies each of these factors. At minimum, however, Inhance should be allowed to intervene permissively. Inhance also has standing to intervene under circuit precedent. Inhance conferred with counsel for Appellants and EPA before filing this motion and understands that both may file responses.

## I. INHANCE IS ENTITLED TO INTERVENE.

### A. Inhance's Motion To Intervene Is Timely.

First, Inhance has moved to intervene in a timely manner. Courts consider whether an intervention motion is timely by looking to several factors. *Karsner v.*

*Lothian*, 532 F.3d 876, 886 (D.C. Cir. 2008). First, a court measures the "time elapsed since the inception of the suit." A court next considers "the purpose for which intervention is sought" as well as "the need for intervention as a means of preserving the applicant's rights." *Id.* And a court looks to "the probability of prejudice to those already parties in the case." *Id.* Each timeliness factor favors Inhance's intervention.

Inhance's motion is timely. *See, e.g.*, *Fund For Animals, Inc. v. Norton*, 322 F.3d 728, 734–735 (D.C. Cir. 2003) (finding it "not difficult at all" to find timely a motion to intervene filed "less than two months after the plaintiffs filed their complaint and before the defendants filed an answer"). Inhance timely moved to intervene below and has promptly sought to intervene on appeal. Inhance's intervention is in step with this Court's practice of permitting appellate intervention so long as intervenors move "within a reasonable time from when their doubts about adequate representation arose." *United States House of Representatives v. Price*, No. 16-5202 (D.C. Cir. Aug. 1, 2017). Although this case is not governed by Federal Rule of Appellate Procedure 15(d), which in cases involving direct review of an agency order requires a party to intervene "within 30 days of the date on which the petition for review is filed," Fed. R. App. P. 15(d), Inhance's motion is brought within 30 days of Appellants' notice of appeal—satisfying that benchmark as well. Inhance's motion is prompt by any measure.

In addition, because the parties have not yet filed their initial submissions, and the Court has not ordered or considered any briefing from the parties, there is no "credibl[e] claim" to prejudice resulting from Inhance's "demonstrated interest in intervening as a defendant in this action." *Wildearth Guardians v. Salazar*, 272 F.R.D. 4, 14 (D.D.C. 2010) (citation omitted). Inhance has timely moved to intervene.

### B. Inhance Has A Legally Protected Interest In The Action.

A prospective intervenor should also "demonstrate a legally protected interest in the action." *SEC v. Prudential Sec. Inc.*, 136 F.3d 153, 156 (D.C. Cir. 1998). This "test operates in large part as a practical guide, with the aim of disposing of disputes with as many concerned parties as may be compatible with efficiency and due process." *WildEarth Guardians,* 272 F.R.D. at 12–13.

Appellants here seek to compel the EPA to take action under TSCA Section 6 "prohibiting the production of PFOA during the Inhance fluorination process," Compl. ¶ 121, and demand that the agency be required under TSCA Section 7 "to immediately file an imminent hazard action . . . against Inhance" or "make its proposed rule . . . imposing such a ban immediately effective." *id*. ¶ 133. Given that Appellants seek relief focused squarely on Inhance, Inhance's interests are not just "relat[ed] to the property or transaction that is the subject of the action," Fed. R. Civ. P. 24(a)(2), they are the primary focus of the lawsuit. That much is evident from the

Complaint's more than three dozen invocations of Inhance and its fluorination technology.  *See* Compl. ¶¶ 5, 8, 16, 21, 29, 33, 34, 36, 52–57, 64, 68–71, 75, 76–78, 99, 101, 121, 130, 133.  This is not a close call; Inhance's interest is apparent on the face of the Complaint.

Because the agency action at issue involves "potential direct regulation of" Inhance and implicates "indirect" and "tangential" benefits deriving from agency action, Inhance has a "significant and direct interest" for intervention purposes.  *See Waterkeeper All., Inc. v. Wheeler*, 330 F.R.D. 1, 7 (D.D.C. 2018) (quoting *Crossroads Grassroots Pol'y Strategies v. Federal Election Comm'n*, 788 F.3d 312, 318 (D.C. Cir. 2015)); *Foster v. Gueory*, 655 F.2d 1319, 1324 (D.C. Cir. 1981) ("An intervenor's interest is obvious when he asserts a claim to property that is the subject matter of the suit . . .").  To take just one example:  In *Fund for Animals*, 322 F.3d at 735, this Court found that the Mongolian ministry could intervene in a challenge to an Interior Department action because the relevant "property"—Mongolian sheep—belonged to the putative intervenor and the relevant "transaction" was the agency's decision to permit the importation of that property from Mongolia, leaving "no question" that the Mongolian ministry demonstrated the requisite interest.  *Id.* (quoting Fed. R. Civ. P. 24(a)(2)).

And this is not just any interest.  Appellants seek drastic regulatory action from EPA that would force Inhance to shut down its operations.  Inhance has a

legally protectable interest in maintaining its current business operations—which more than suffices to warrant intervention. *See Fund for Animals*, 322 F.3d at 733 (threatened loss of revenue sufficient interest to support intervention); *Akiachak Native Cmty. v. United States Dep't of Interior*, 584 F. Supp. 2d 1, 6 (D.D.C. 2008) (potential loss of right to tax constitutes sufficient interest); *Utahns for Better Transp. v. United States Dep't of Transp.*, 295 F.3d 1111, 1115 (10th Cir. 2002) ("The threat of economic injury from the outcome of litigation undoubtedly gives a petitioner the requisite interest.").

### C. This Action Threatens To Impair Inhance's Protected Interest.

Resolution of this appeal without Inhance's participation would impair and impede Inhance's protected interest. "In evaluating this requirement, the Court considers the 'practical consequences' of denying intervention." *Sault Ste. Marie Tribe of Chippewa Indians v. Bernhardt*, 331 F.R.D. 5, 13 (D.D.C. 2019) (quoting *Fund for Animals*, 322 F.3d at 735). Intervention is warranted where the proposed intervenors will suffer an impaired interest either directly or indirectly. *Crossroads*, 788 F.3d at 318 (citing *Fund for Animals*, 322 F.3d at 728, and *Military Toxics Project v. EPA*, 146 F.3d 948, 954 (D.C. Cir. 1988)).

Appellants seek an order prohibiting Inhance from using its proprietary fluorination technology and compelling EPA to take adverse agency action against Inhance under Sections 6 and 7 of TSCA. *See* Compl. ¶¶ 121, 133. If Appellants

11

prevail, the "disposition of the action would result in a substantial change in the status quo with respect to those interests," such that "the task of reestablishing the status quo . . . will be difficult and burdensome." *District of Columbia v. Potomac Elec. Power Co.*, 826 F. Supp. 2d 227, 234 (D.D.C. 2011) (citation omitted). Even if Inhance "could reverse an unfavorable ruling by bringing a separate lawsuit," the task of reestablishing Inhance's fluorination operations and customers will be "difficult and burdensome"—a sufficient showing for this factor to favor intervention. *See Fund For Animals*, 322 F.3d at 735; *see also Natural Res. Def. Council v. Costle*, 561 F.2d 904, 912 (D.C. Cir. 1977) (allowing rubber and chemical companies to intervene "[g]iven the acknowledged impact that [EPA] regulation can be expected to have upon their operations").

## D. Inhance's Interest Is Not Adequately Represented By Existing Parties.

The final intervention factor asks whether the would-be intervenor is already adequately represented by the existing parties. A putative intervenor need only show that "representation of his interest 'may be' inadequate"; this burden is a "minimal" one. *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972) (citation omitted).

Neither Appellants nor EPA can adequately represent Inhance's interests. Appellants are plainly adverse to Inhance's interests; they have filed a seemingly unending stream of lawsuits against Inhance, and now seek a court order directing

EPA to take imminent regulatory and enforcement action against Inhance. Nor is EPA an adequate representative of Inhance's interests. The default presumption in this Court is that "governmental entities do not adequately represent the interests of aspiring intervenors." *Fund for Animals*, 322 F.3d at 736. For that reason, courts "look skeptically on government entities serving as adequate advocates for private parties." *Crossroads*, 788 F.3d at 321; *see also*, e.g., *Dimond v. District of Columbia*, 792 F.2d 179, 192–193 (D.C. Cir. 1986) (a commercial entity seeks to "protect a more narrow and 'parochial' financial interest not shared by the citizens" the government represents, and the government "would be shirking its duty were it to advance this narrower interest at the expense of its representation of the general public interest").

That is particularly true here, where EPA has locked horns in litigation with Inhance in TSCA cases where the agency has repeatedly failed in its effort to ban the very fluorination process that Appellants attack in this action. EPA's own conduct after Appellants filed this case proves that the pattern continues: The agency sought comment on whether to take regulatory action under TSCA Section 6 that, if finalized, could devastate Inhance's business. *Certain PFAS Risk Management Under the TSCA; Request for Comment*, 89 Fed. Reg. 79,581 (Sept. 30, 2024). That is not the picture of parties with aligned interests.

And this Court need look no further than the competing motions to dismiss presented below to see why the Government does not adequately represent Inhance's interests. Inhance has presented arguments and defenses that EPA has not raised—including the threshold issue of whether there is any "imminent risk" under TSCA Section 7, a question the Government all but ignored below.

Absent intervention, Inhance will be left to watch PEER, CEH, and EPA litigate over whether Inhance's fluorination process will be banned. That is hardly the picture of adequate representation.

## II. INHANCE HAS STANDING TO INTERVENE.

A would-be intervenor also must establish standing to intervene under the law of the circuit, *Yocha Dehe v. United States Department of the Interior*, 3 F.4th 427, 430 (D.C. Cir. 2021); generally, however, "the standing inquiry will fold into the underlying inquiry under Rule 24(a)." *Wildearth Guardians*, 272 F.R.D. at 13 n.5. In practice, that means "when a putative intervenor has a 'legally protected' interest under Rule 24(a), it will also meet constitutional standing requirements, and *vice versa*." *Id*. Inhance has a legally protected interest in this action for the reasons described above.

To the extent Inhance must separately demonstrate standing, it easily satisfies the constitutional minima. Inhance is the object of the regulatory action that Appellants ask this Court to compel. *See Advocates for Highway & Auto Safety v.*

*Federal Motor Carrier Safety Admin.*, 41 F.4th 586, 593 (D.C. Cir. 2022) (concluding there is standing where the party is the "object of the regulatory action at issue and will be harmed by the new rule's operation") (internal quotation marks, brackets, and ellipses omitted). That action would force the shutdown of Inhance as a going concern. Inhance thus faces imminent, concrete, and particularized harm from the risk resulting from the relief Appellants seek. This injury is "fairly traceable" to Appellants' efforts to achieve through litigation what they have thus far failed to achieve before the agency. *Ascendium Educ. Sols., Inc. v. Cardona*, 78 F.4th 470, 478 (D.C. Cir. 2023).

And there is no question that Inhance's harm would be redressed by this Court denying Appellants' request that EPA be ordered to take regulatory action against Inhance. *See, e.g.*, *Fund for Animals*, 322 F.3d at 733 (where intervenors defend against loss resulting from "regulatory action" sought in the "underlying lawsuit," "it is likely that a decision favorable to the [intervenors] would prevent that loss from occurring). Inhance thus has standing to intervene.

## III. INHANCE SATISFIES THE CRITERIA FOR PERMISSIVE INTERVENTION.

In the alternative, Inhance satisfies the requirements under Rule 24(b)(1) for permissive intervention. Permissive intervention may be allowed where a party "is given a conditional right to intervene by a federal statute" or "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P.

24(b)(1). In exercising its discretion, a court "must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). A movant seeking permissive intervention "must ordinarily present: (1) an independent ground for subject matter jurisdiction; (2) a timely motion; and (3) a claim or defense that has a question of law or fact in common with the main action." *EEOC v. National Children's Ctr., Inc.*, 146 F.3d 1042, 1046 (D.C. Cir. 1998).

As explained above, *see supra* 9–11, Inhance has an independent ground for subject matter jurisdiction. It has standing to intervene for the reasons discussed above.

Inhance also has timely moved to intervene by seeking leave to intervene within weeks of Appellants noticing the appeal, *see supra* 7–9. Inhance has shown its intent to promptly participate in the matter, seeking to intervene before the parties' initial submissions are due and before the Court has ordered briefing to begin. There is no plausible argument that Inhance's presence will "unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). Inhance maintains a significant interest in this case's outcome and "timely moved to join" the appeal at "a nascent stage." *100Reporters LLC v. United States Dep't of Just.*, 307 F.R.D. 269, 286–287 (D.D.C. 2014).

What's more, Inhance has an acute interest in ensuring that Appellants and EPA do not together shut down Inhance's operations; that interest is directly connected to the questions of law and fact in this action. *See, e.g.*, *Electronic Priv. Info. Ctr. v. FTC*, No. 18-942 (TJK), 2019 WL 11307643, at *1 (D.D.C. Aug. 28, 2019). Inhance's "participation will likely 'contribute to . . . the just and equitable adjudication of the legal question presented,' making permissive intervention proper." *Sierra Club v. McCarthy*, 308 F.R.D. 9, 12 (D.D.C. 2015) (citation omitted). For that reason, too, Inhance should be allowed to intervene.

## CONCLUSION

For the foregoing reasons, Inhance respectfully requests that its Motion to Intervene be granted.

Respectfully submitted,

/s/ Catherine E. Stetson

J. TOM BOER
HOGAN LOVELLS US LLP
4 Embarcadero Center, Suite 3500
San Francisco, CA 94111
(415) 274-2300
tom.boer@hoganlovells.com

CATHERINE E. STETSON
SUSAN M. COOK
MARLAN GOLDEN
HOGAN LOVELLS US LLP
555 Thirteenth Street, NW
Washington, DC 20004
(202) 637-4951
cate.stetson@hoganlovells.com

Dated: January 24, 2025

*Counsel for Inhance Technologies LLC*

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g)(1), the undersigned hereby certifies that this document complies with the type-volume limitation of Fed. R. App. P. 27(d)(2).

1.	Exclusive of the exempted portions of the document, as provided in Fed. R. App. P. 32(f), this document contains 3,820 words.

2.	The document has been prepared in proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font. As permitted by Fed. R. App. P. 32(g)(1), the undersigned has relied upon the word count feature of this word processing system in preparing this certificate.

/s/ Catherine E. Stetson

January 24, 2025	Catherine E. Stetson

## CERTIFICATE OF SERVICE

I certify that on January 24, 2025, the foregoing was electronically filed through this Court's CM/ECF system, which will send a notice of filing to all registered users.

/s/ Catherine E. Stetson
Catherine E. Stetson