**ORAL ARGUMENT NOT YET SCHEDULED**

No. 24-5294

_____

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

_____

PUBLIC EMPLOYEES FOR ENVIRONMENTAL REPONSIBILITY, et al.
*Plaintiffs-Appellants,*

v.

LEE ZELDIN, in his official capacity as Administrator of the EPA, et al
*Defendants-Appellees*

_____

Appeal from the United States District Court for the District of Columbia
No. -24-cv-02194-JEB (Hon. James E. Boasberg)

_____

# OPPOSITION OF CENTER FOR ENVIRONMENTAL HEALTH AND PUBLIC EMPLOYEES FOR ENVIORNMENTAL RESPONSIBILITY TO INHANCE TECHNOLOGIES' MOTION TO INTERVENE

Robert M. Sussman
SUSSMAN & ASSOCIATES
3101 Garfield Street, NW
Washington, DC 20008
(202) 716-0118

*Attorneys for Plaintiff Center for Environmental Health*

1

**INTRODUCTION**

Appellants' Center for Environmental Health ("CEH") and Public Employees for Environmental Responsibility ("PEER") are non-profit organizations dedicated to protecting the public from environmental and health threats and promoting a high standard of environmental ethics, scientific integrity, and legal accountability within industry and government agencies. They submit this Opposition to the motion of Inhance Technologies LLC ("Inhance") to intervene in this appeal

PEER and CEH are appealing from the December 27, 2024 order of the District Court dismissing their Complaint to compel appellee Environmental Protection Agency ("EPA") to perform mandatory duties created by section 4(f) of the Toxic Substances Control Act ("TSCA"). 15 U.S.C. §2603(f). Under this provision, the EPA Administrator "*shall* . . . initiate applicable action under section [5, 6 or 7]" when it obtains information indicating "that there may be a reasonable basis to conclude that a chemical substance or mixture presents a significant risk of serious or widespread harm to human beings" (emphasis added). Section 4(f) sets a mandatory deadline for carrying out this duty: EPA must initiate action to prevent or reduce the risk to a sufficient extent "within the 180-day period beginning on the date of the receipt of such information." EPA's obligations under section 4(f) are judicially enforceable under Section 20(a)(2) of TSCA, 15 U.S.C. §2619(a)(2), under which "any person may commence a civil action . . . against the Administrator to perform any act or duty under this Act which is not discretionary."

Plaintiffs' Complaint alleges that EPA had a "reasonable basis to conclude" that the formation of a dangerous substance called Perfluorooctanoic Acid ("PFOA") during Inhance's fluorination of plastic containers "presents a significant risk of serious or widespread harm to human beings" under section 4(f) and that EPA had accumulated sufficient evidence to trigger section 4(f) by early 2023.[1] Accordingly, plaintiffs maintained, EPA was in default on its obligation to "initiate action" to "prevent or reduce" the risk to a "sufficient extent" within 180 days. The Complaint asked the District Court to order EPA to remedy this violation by directing EPA to initiate rulemaking complying with section 4(f) as expeditiously as possible.

PFOA, the substance at issue in this case, is likely the most harmful of the class of per- and polyfluoroalkyl substances ("PFAS"), a family of chemicals that are ubiquitous in the environment and human blood and have raised widespread health concerns in the US and around the world. As EPA has explained, "[d]ue to their strong carbon-fluorine bonds, many PFAS can be very persistent in the environment with degradation periods of years, decades, or longer under natural conditions." Often called "forever chemicals," PFAS "remain chemically and thermally stable, . . . making them resistant to hydrolysis, photolysis, microbial degradation, and metabolism. These properties are what make . . .

---

[1] The background information in this section is contained in plaintiffs' Complaint (ECF 1) and their Memorandum In Opposition To Defendants' Motion To Dismiss (ECF 27) in the District Court docket.

some PFAS extremely persistent in the human body and the environment." *EPA PFAS National Primary Drinking Water Regulation Rulemaking,* 88 Fed. Reg. 18638, 18643 (March 29, 2023) (citations omitted). PFAS have been detected in the blood of the general U.S. population, with 98 percent of those sampled showing detectable levels of these compounds. 88 Fed. Reg. 18643.

PFAS are associated with "significant and diverse adverse health effects" that "include (but are not limited to): cancer and effects on the liver (*e.g.,* liver cell death), growth and development (*e.g.,* low birth weight), hormone levels, kidney, immune system, lipid levels (*e.g.,* high cholesterol), the nervous system, and reproduction." *Id.* PFOA, an extensively studied PFAS which is pervasive in human blood and the environment, has been shown to cause these adverse effects at extremely low doses; EPA considers it to be a carcinogen with no safe level of exposure.

Inhance's business is treating high-density polyethylene ("HDPE") and other plastic containers by post-mold "fluorination," a process in which fluorine gas is applied to the molded container under high temperatures to improve its barrier properties (i.e., its impermeability). After molding the plastic resin into a fixed size and shape, container manufacturers ship them to Inhance facilities to be fluorinated. The fluorinated containers are then sent to distributors or product suppliers who add the container contents and ship the filled containers to downstream users. Inhance fluorinates approximately 200 million

4

containers per year. These containers are used to package a wide variety of products with diverse commercial, industrial and consumer applications across the economy.

In the fall of 2020, plaintiff PEER and Massachusetts Department of Environmental Protection tested fluorinated containers of Anvil 10+10®, a pesticide used for mosquito control, and detected the presence of multiple PFAS, including PFOA. In December 2020, EPA tested unused fluorinated containers obtained from the distributor of Anvil 10+10® and detected these PFAS in the rinsates (solvents used to extract chemical compounds). On January 14, 2021, EPA issued a press release "making new information available about EPA testing that shows PFAS contamination from fluorinated containers." [2]

Over the following two years, EPA conducted two additional rounds of testing confirming formation of 13 different PFAS in fluorinated containers. Similar results were reported by several academic researchers and independent testing laboratories. Inhance itself admitted to EPA that the production of PFAS is "an apparently unavoidable aspect of fluorination of HDPE containers" and "there is no easy solution to the problem."

By early 2023, this growing body of data demonstrated in the aggregate that PFOA and several other PFAS were consistently found in the walls of fluorinated containers and were shown to readily leach into the container contents and that, over time, the

---

[2] PFOA was phased out of production by 2016 under an agreement between EPA and the major PFAS manufacturers. Formation of PFOA during the Inhance fluorination process is one of a handful of ongoing production activities in the US.

concentrations of PFAS in the containers and their contents increased. This extensive database, coupled with new determinations by EPA regarding the health risks of PFOA at extremely low levels of exposure in drinking water, provided a "reasonable basis" to conclude that PFAS formation during fluorination presents a "significant risk of serious or widespread harm to human beings" and, as such, required EPA to initiate action under section 4(f).

In his December 27, 2024 order, Judge Boasberg nonetheless dismissed the Complaint because, in his view, EPA had discharged any obligation it had under section 4(f) by granting a petition under an unrelated provision of TSCA, section 21, on July 24, 2024, and publishing a Federal Register notice on September 30, 2024 requesting information that might be relevant to a possible rulemaking on PFOA formation during fluorination under section 6 of TSCA. PEER and CEH will argue in this appeal that these limited, inconclusive and preliminary steps were insufficient to satisfy EPA's duty under section 4(f) to "initiate applicable action under section [5, 6 or 7] to prevent or reduce [the] risk to a sufficient extent."

Appellants will also argue that EPA failed to perform its non-discretionary duty under section 7(a) of TSCA, 15 U.S.C. §2606, to file suit "against any person who manufactures, processes, distributes in commerce, or uses, or disposes of, an imminently hazardous chemical substance or mixture." Under section 7(a)(2) of TSCA, if EPA "has not made a rule under section [6(a)] immediately effective" as authorized by section

6(d)(3)(A), it "shall" commence a suit for immediate injunctive relief where the substance at issue is "imminently hazardous." Because TSCA states that such suits "shall" be brought for "imminently hazardous" chemicals, filing these actions is a non-discretionary duty of EPA and is enforceable in citizens' suits under TSCA section 20(a)(2).

Judge Boasberg nonetheless concluded that EPA had no obligation to bring an "imminent hazard" action to prevent PFOA formation during fluorination because no duty arose under section 20 to bring that action in the absence of a specific statutory deadline and, in any event, such a duty would only have arose if EPA had issued a TSCA section 6(a) rule regulating fluorination but did not make it immediately effective. PEER and CEH will show in this appeal that this interpretation of TSCA conflicts with the plain language of the law and that the "best reading" is that the law required EPA to file an imminent hazard suit against Inhance under the circumstances of this case.

## ARGUMENT

**Inhance Does Not Satisfy the Criteria for Intervention as of Right under Rule 24(a)**

**I. Inhance has not Demonstrated a Sufficient Interest in the Issues in this Case to Warrant Intervention**

Inhance does not meet the first requirement for intervention as of right under rule 24(a) because the company does not have an "interest relating to the . . . subject of the action." Such interests must be "of such a direct and immediate character that the intervenor will either gain or lose by the direct legal operation and effect of the judgment."

*Ctr. for Food Safety*, 2024 WL 1299338 at *7 (citing *United States v. Am. Tel. and Tel. Co.*, 642 F.2d 1285, 1291–92 (D.C. Cir. 1980)).

This case, however, is not about Inhance's legal obligations. The issue is whether EPA – not Inhance – had a duty to carry out non-discretionary responsibilities under section 4(f) of TSCA. If appellants prevail, it would fall to the Agency – rather than the company – to "initiate action" by undertaking a rulemaking under section 6 of the law. Any order issued by the District Court to enforce this duty would only apply to EPA; it would not impose requirements on Inhance.

Moreover, the order would not dictate the contents of the proposed rule except in general terms and the outcome of the rulemaking would be both outside the scope of the order and committed to EPA's discretion. While the rulemaking would likely address the Inhance fluorination process, Inhance would have a full opportunity to submit comments and other information in response to EPA's proposal and then to seek judicial review of the final rule in a court of appeals under section 19(a) of TSCA. In short, Inhance's legal interests would be protected in the rulemaking and follow-up judicial review process and would not be affected by any remedy that results from this case. Thus, Inhance fails to meet this critical precondition for intervention as of right.

## II. Disposition of this Case Will Not Impair or Impede Inhance's Interests

Inhance also fails to meet another prerequisite for intervention under Rule 24(a) – that disposition of the case may, as a practical matter, impair or impede the movant's ability

to protect its interest. Even assuming that Inhance had demonstrated a sufficient interest in this case, it is far from clear how that interest might be impaired or impeded by the case's outcome. As described above, Inhance will not be harmed by an order directing EPA to take actions complying with section 4(f). Since that order will only apply to EPA, it would not require Inhance to assume any obligations. Accordingly, Inhance's concern is not with the order itself but with the potential impacts on its business if, in the course of carrying out the order, EPA proposes and finalizes a rule prohibiting or otherwise restricting PFAS formation during its fluorination process. However, even if PEER and CEH prevail on their appeal, these consequences may not come to pass, and Inhance will in any case have ample remedies before the agency and in a court of appeals should EPA ultimately promulgate a rule harming its business. Thus, disposition of this case will not as a practical matter impair or impede the company's ability to protect its interests.

### III. There is No Basis to Conclude that EPA Will Not Adequately Protect Inhance's Interests

Inhance has also failed to demonstrate how its interest would not be adequately represented by existing parties – the final prong it must satisfy under Rule 24(a). In the District Court, EPA took a strong stance that EPA's actions on fluorinated containers under section 21 of TSCA were sufficient to discharge any obligation it had to initiate action under section 4(f). Obviously, Inhance stands to benefit if the Court sides with EPA. It is thus inconceivable that Inhance would take a different position before this Court on the interpretation of TSCA. To the extent Inhance also tried to emphasize the harm to its

business from any EPA rule restricting fluorination, this would not be relevant to either the issues raised by appellants or EPA's position in response and would therefore play no role in the resolution of this appeal. It is hard to fathom why Inhance could be denied adequate representation by other parties on issues that are not before the Court.

## CONCLUSION

The Court should deny Inhance's motion to intervene.

Respectfully submitted,

*/s/ Robert M. Sussman*
Robert M. Sussman
SUSSMAN & ASSOCIATES
DC BAR NO. 226746
3101 Garfield Street, NW
Washington, DC 20008
(202) 716-0118
bobsussman1@comcast.net
*Attorneys for Plaintiff Center for Environmental Health*

*/s/PaulaDinerstein*
Paula Dinerstein
General Counsel
PUBLIC EMPLOYEES FOR
ENVIRONMENTAL RESPONSIBILITY
DC BAR NO. 333971
962 Wayne Avenue, Suite 610
Silver Spring, MD 20910
202-265-7337
pdinerstein@peer.org
*Attorneys for Public Employees for Environmental Responsibility*

March 5, 2025

# CERTIFICATE OF PARTIES, RULINGS AND RELATED CASES

Plaintiffs-Appellants submit this Certificate of Parties, Rulings and Related Cases under Circuit Rule 28(a)(1):

  A. **Parties. Movants and Amici:**

   **Plaintiffs-Appellants**

   Center for Environmental Health

   Public Employees for Environmental Responsibility

   **Defendants-Appellees**

   U.S. Environmental Protection Agency

   Lee, Zeldin in his official capacity as Administrator, USEPA

   **Movants for Intervention**

   Inhance Technologies LLC

  B. Rulings **under Review**

The order under review on this appeal is the District Court's December 27. 2024 Order granting Defendants' motion to dismiss and denying as moot Inhance's motion to intervene as moo t.

**C. Related Cases**

Inhance has filed a notice of appeal of the District Court's order denying its motion to dismiss.

        Respectfully submitted,

        */s/ Robert M. Sussman*
        Robert M. Sussman
        SUSSMAN & ASSOCIATES
        DC BAR NO. 226746
        3101 Garfield Street, NW
        Washington, DC 20008
        (202) 716-0118
        bobsussman1@comcast.net
        *Attorneys for Plaintiff Center for Environmental Health*

March 5, 2025

# CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g)(1), I hereby certify that the foregoing Motion for Leave to Intervene contains 2112 words, as counted by counsel's word processing system, and thus complies with the 5,200- word limit. *See* Fed. R. App. P. 27(d)(2)(A).

Further, this document complies with the typeface and type-style requirements of the Federal Rules of Appellate Procedure, 32(a)(5) and (a)(6), because this document has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 using size 14 Times New Roman font.

                                        */s/Robert M. Sussman*
                                        Robert M. Sussman
                                        *Counsel to Appellants CEH and PEER*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was served on all counsel o record via the Court's electronic ECF system on March 5, 2025.

>	*/s/Robert M. Sussman*
>	Robert M. Sussman