ORAL ARGUMENT NOT YET SCHEDULED

Nos. 24-5294, 25-5015

In The

# United States Court of Appeals
# for the District of Columbia Circuit

PUBLIC EMPLOYEES FOR ENVIRONMENTAL RESPONSIBILITY, ET AL.,
*Plaintiffs-Appellants*,

v.

LEE ZELDIN, ET AL.,
*Defendants-Appellees*.

On Appeal from the United States District Court
for the District of Columbia, No. 24-cv-2194
(James E. Boasberg, C.J.)

**REPLY IN SUPPORT OF
INHANCE TECHNOLOGIES LLC'S MOTION TO INTERVENE**

J. TOM BOER
HOGAN LOVELLS US LLP
4 Embarcadero Center, Suite 3500
San Francisco, CA 94111
(415) 274-2300
tom.boer@hoganlovells.com

CATHERINE E. STETSON
SUSAN M. COOK
MARLAN GOLDEN
HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.
Washington, D.C. 20004
(202) 637-5491
cate.stetson@hoganlovells.com

*Counsel for Inhance Technologies LLC*

March 12, 2025

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................ ii

GLOSSARY.......................................................................................................iv

INTRODUCTION ................................................................................................1

ARGUMENT .......................................................................................................2

   I.    INHANCE'S INTEREST IN INTERVENTION MERITS
        PROMPT RESOLUTION ...........................................................................2

   II.   PEER AND CEH'S RESPONSE IS UNTIMELY .......................................5

   III.  INHANCE SATISFIES ALL THE STANDARDS FOR INTERVENTION ......6

        A. INHANCE'S INTEREST IS SUBSTANTIAL .........................................6

        B. THIS CASE THREATENS INHANCE'S LEGALLY
           PROTECTED INTEREST...................................................................7

        C. EXISTING PARTIES CANNOT ADEQUATELY REPRESENT
           INHANCE'S INTERESTS .................................................................9

        D. AT MINIMUM, PERMISSIVE INTERVENTION IS APPROPRIATE......10

CONCLUSION ..................................................................................................11

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

Page(s)

**Cases:**

*Association for Educ. Fairness v. Montgomery Cnty. Bd. of Educ.*,
   88 F.4th 495 (4th Cir. 2023) ...................................................................4, 5

*Bates v. Jones*,
   127 F.3d 870 (9th Cir. 1997) ...............................................................................2

*Brisbon v. Tischner*,
   No. 23-5007, 2023 WL 5162363 (D.C. Cir. Aug. 9, 2023) ..........................11

*Clinton v. City of New York*,
   524 U.S. 417 (1998)................................................................................................7

*Community Coal. for Media Change v. FCC*,
   646 F.2d 613 (D.C. Cir. 1980)..............................................................................5

*\*Crossroads Grassroots Policy Strategies v. FEC*,
   788 F.3d 312 (D.C. Cir. 2015)..........................................................6, 7, 9, 10

*Dimond v. District of Columbia*,
   792 F.2d 179 (D.C. Cir. 1986).............................................................................9

*EEOC v. National Children's Ctr., Inc.*,
   146 F.3d 1042 (D.C. Cir. 1998)........................................................................10

*Fund for Animals, Inc. v. Norton*,
   322 F.3d 728 (D.C. Cir. 2003).................................................................7, 8, 9

*Hutchinson v. Pfeil*,
   211 F.3d 515 (10th Cir. 2000) .............................................................................4

*\*In re Brewer*,
   863 F.3d 861 (D.C. Cir. 2017).......................................................................2, 3

*SEC v. Dresser Indus., Inc.*,
   628 F.2d 1368 (D.C. Cir. 1980).........................................................................2

*Mova Pharm. Corp. v. Shalala*,
   140 F.3d 1060 (D.C. Cir. 1998)..........................................................................7

*\*Natural Res. Def. Council v. Costle*,
   561 F.2d 904 (D.C. Cir. 1977)........................................................................8, 9

*Richardson v. Flores*,
   979 F.3d 1102 (5th Cir. 2020) .............................................................................4

*Trbovich v. United Mine Workers of Am.*,
   404 U.S. 528 (1972)................................................................................................9

*Authorities upon which we chiefly rely are marked with an asterisk.

# TABLE OF AUTHORITIES–CONTINUED

Page(s)

*United States House of Representatives v. Price*,
  No. 16-5202, 2017 WL 3271445 (D.C. Cir. Aug. 1, 2017) ............................ 2

**Regulation:**

89 Fed. Reg. 79,581 (Sept. 30, 2024) ................................................................ 10

**Rules:**

D.C. Cir. R. 27(g)(1) ........................................................................................... 5

D.C. Cir. R. 27(g)(2) ........................................................................................... 5

Fed. R. App. P. 27(a)(3)(A) ................................................................................ 5

Fed. R. Civ. P. 24(a) ........................................................................................... 6

# GLOSSARY

CEH             Center for Environmental Health

EPA             Environmental Protection Agency

PEER            Public Employees for Environmental Accountability

PFOA            Perfluorooctanoic Acid

TSCA            Toxic Substances Control Act

**INTRODUCTION**

This appeal asks whether the Environmental Protection Agency must take regulatory action against Inhance under the Toxic Substances Control Act. Appellants Public Employees for Environmental Responsibility (PEER) and Center for Environmental Health (CEH) say yes; Inhance says no; EPA says very little. When the Court decides that question, it should do so with Inhance's participation as a full party to the appeal.

Inhance is the stated target of this case: It is named in the underlying complaint more than three dozen times. PEER and CEH's stated goal is to have EPA declare that containers fluorinated by Inhance pose a public safety risk and take action that could halt its fluorination process entirely.

In their tardy opposition brief, PEER and CEH confirm that they seek to put Inhance and its business operations out of existence. It should go without saying, then, that Inhance's interest will be impaired if it is left to watch from the sidelines as the Court hears argument between its regulator and PEER/CEH about whether *Inhance's business* can continue. And the Government's proposal to defer resolution of Inhance's intervention motion until after merits briefing—briefing that apparently would not include Inhance—removes any lingering question: The Government is not adequately protecting Inhance's interests when it attempts to fence out the regulated party identified by Appellants in the underlying action.

The Court should grant Inhance's intervention motion.

## ARGUMENT

### I. INHANCE'S INTEREST IN INTERVENTION MERITS PROMPT RESOLUTION.

Inhance's motion to intervene satisfies the standards for intervention under this Court's precedent. It makes sense, then, that "the Government does not meaningfully oppose intervention on the merits." *In re Brewer*, 863 F.3d 861, 872 (D.C. Cir. 2017) (emphasizing that " 'the burden of proof' on certain aspects of intervention 'rests on those resisting intervention' " (quoting *SEC v. Dresser Indus., Inc.*, 628 F.2d 1368, 1390 (D.C. Cir. 1980)). The Government never argues that Inhance does not satisfy the intervention factors. *See id.* at 873 (allowing intervention on appeal after concluding that intervenors satisfied the requirements of Federal Rule of Civil Procedure 24(a)(2)). Nor does it suggest that Inhance's intervention will result in any prejudice. *See, e.g.*, *United States House of Representatives v. Price*, No. 16-5202, 2017 WL 3271445, at *2 (D.C. Cir. Aug. 1, 2017) (granting intervention when the Government failed to identify any prejudice); *Bates v. Jones*, 127 F.3d 870, 874 (9th Cir. 1997) ("Like other cases in which intervention has been allowed on appeal, the state does not assert that it will be prejudiced by intervention.").

Rather, the Government argues only that this Court should defer consideration on Inhance's motion to intervene "until the underlying appeals are briefed," pointing

out that if this Court were to grant Inhance's motion now, its separate intervention appeal would become moot. EPA Opp. 3.

Inhance agrees that if this Court grants its motion to intervene in this appeal, its separate appeal of the district-court order denying intervention would become moot. But this is a reason to *grant* intervention, not postpone it. This Court recognized as much in *In re Brewer*, where the Court addressed a motion to intervene on appeal that was pending at the same time as movants' appeal from an order dismissing their motion to intervene in the case below. *See In re Brewer*, 863 F.3d at 872. The Court granted the motion for intervention and proceeded to consider intervenors' arguments on the merits, even though doing so rendered their separate intervention appeal moot. *See id.* at 867 (observing that the Court's disposition of intervenors' motion to intervene on appeal "disposes of the need to reach" their separate appeal from the District Court's denial of their intervention motion); *see also id.* at 871 ("[T]he need to address the motion to intervene on appeal is paramount."). Here, as there, the interests of justice and judicial economy favor timely resolution of the intervention question. *See id.* at 872 ("To allow intervention . . . in the first appellate review proceeding is to avoid unnecessary duplication of proceedings, and to adhere to the goal of obtaining a just result with a minimum of technical requirements.") (internal citation and quotation marks omitted).

Further, Inhance's motion presents no danger of procedural gamesmanship. Inhance "sought intervention in the district court" and "did not forgo any meaningful opportunity to obtain review of an adverse district court ruling." *Association for Educ. Fairness v. Montgomery Cnty. Bd. of Educ.*, 88 F.4th 495, 499 (4th Cir. 2023). The Government suggests that allowing intervention on appeal would "short-circuit[] the normal appeal process and undermine[] rules governing appellate procedure" and would somehow give Inhance "an unfair advantage." EPA Opp. 3. That is not true here, and the cases the Government cites do not stand for that proposition in any event. EPA Opp. 3.

Inhance did not, for example, move to intervene on appeal to evade rules governing timeliness. *See Hutchinson v. Pfeil*, 211 F.3d 515, 519 (10th Cir. 2000) (denying intervention on appeal where the movant was seeking to intervene because time had expired to appeal the district court's denial of her motion below). Here, Inhance moved promptly to assert its rights below and, when the district court denied as moot its motion to intervene, Inhance timely appealed that decision.

Nor is this an end-run around this Court's ordinary standards for review. *See Richardson v. Flores*, 979 F.3d 1102, 1105 (5th Cir. 2020) (noting that courts must guard against "procedural gamesmanship to skirt unfavorable standards of review"). The district court denied Inhance's motion to intervene as moot without reaching the merits of its arguments. *See* Order, *Public Emps. for Env't Resp. v. Regan*, No. 1:24-

cv-2194 (D.D.C. Dec. 11, 2024). In seeking intervention on appeal, Inhance is not asking this Court to redo any intervention analysis by the District Court: Given the court's non-merits disposition, there was none. *See Association for Educ. Fairness*, 88 F.4th at 499.

## II. PEER AND CEH'S RESPONSE IS UNTIMELY.

Appellants PEER and CEH's response opposing intervention should not be considered. Inhance moved to intervene on January 24, 2025. Responses were due February 3. *See* Fed. R. App. P. 27(a)(3)(A). The Government later filed a motion for an extension of time to file its response, which this Court granted. The Government then timely filed its response by its March 5 deadline.

PEER and CEH also filed on March 5. But they neither requested nor received an extension of time to respond. Their response was due February 3, and they did not seek Inhance's consent for an extension or file a motion with the Court—either when that motion would have been due, or even when they eventually lodged a response. *See* Fed. R. App. P. 27(a)(3)(A); D.C. Cir. R. 27(g)(1)–(2). PEER and CEH offer no explanation for the delay. This Court should disregard their joint opposition. *See, e.g.*, *Community Coal. for Media Change v. FCC*, 646 F.2d 613, 616 (D.C. Cir. 1980) (failure to comply with timeliness rules "constitutes neglect which will not be excused" except in extraordinary circumstances).

Even if PEER and CEH's untimely opposition is considered, moreover, their arguments are meritless, as we next discuss.

### III. INHANCE SATISFIES ALL THE STANDARDS FOR INTERVENTION.

Inhance plainly satisfies the standards for intervention. Its business lies at the center of PEER and CEH's appeal, and no existing party adequately represents its interests. Appellants do not attempt to argue Inhance's intervention is untimely, and each of their other arguments fails.

#### A. Inhance's Interest Is Substantial.

PEER and CEH claim that Inhance does not have an interest in this appeal because this case "is not about Inhance's legal obligations." Appellants' Opp. 8. But Inhance's interest in this appeal is apparent. As PEER and CEH acknowledge, this case is all about "Inhance's fluorination of plastic containers." EPA Opp. 3. Appellants will argue that EPA was required to "initiate rulemaking" banning Inhance's fluorination process and "to file an imminent hazard suit against Inhance." EPA Opp. 3, 7. In other words, Inhance is not merely "relat[ed] to the . . . subject of the action," Fed. R. Civ. P. 24(a); it is the direct, named target of the action.

It makes no difference that an outcome in Appellants' favor will impose legal obligations on *EPA* rather than directly on Inhance. When the "agency action at issue involve[s] potential direct regulation" of an intervenor, that intervenor has a "significant and direct interest" in the case. *Crossroads Grassroots Policy Strategies*

*v. FEC*, 788 F.3d 312, 318 (D.C. Cir. 2015); *see also Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 735 (D.C. Cir. 2003). Appellants seek to compel regulatory action focused squarely on Inhance. And the effect on Inhance's business would be extreme: Inhance could be forced to shut down its business operations entirely.

Because Inhance has a legally protectible interest warranting intervention, it also has standing to intervene for the reasons explained in its intervention motion: The two requirements move in tandem. *Cf. Mova Pharm. Corp. v. Shalala*, 140 F.3d 1060, 1076 (D.C. Cir. 1998) (affected party "need not show anything more than that it has standing to sue in order to demonstrate the existence of a legally protected interest for purposes of Rule 24(a)").

### B. This Case Threatens Inhance's Legally Protected Interest.

Appellants argue that "Inhance will not be harmed by an order directing EPA to take actions" under the TSCA because the order would "only apply to EPA." Appellants' Opp. 9. It borders on the absurd to suggest that Inhance would not be harmed by an order directing EPA to take action against Inhance's fluorination process. Should EPA propose a rule under TSCA Section 6 prohibiting the production of perfluorooctanoic acid (PFOA) during Inhance's fluorination process, Inhance will suffer economic injury. *See Clinton v. City of New York*, 524 U.S. 417, 433 (1998) (party who suffers economic harm as a result of governmental action has a concrete injury). The harm will be even more dire if EPA brings an imminent

7

hazard action against Inhance to prohibit the formation of PFOA as an impurity during its fluorination process, or makes its proposed rule imposing such a ban immediately effective; in either scenario, Inhance's fluorination process would be shuttered. As fluorination is the company's primary operation, an order prohibiting the process would be an order that puts Inhance out of business. If Appellants prevail in their argument that EPA is required to take action against Inhance, then Inhance will necessarily be harmed.

The "practical consequences" of denying intervention will leave Inhance without a voice in an appeal that aims to force EPA to take adverse action against it, which will undoubtedly "impair or impede" Inhance's ability to protect its interests. *Fund for Animals*, 322 F.3d at 735. This is true "[r]egardless of whether [Inhance] could reverse an unfavorable ruling by bringing a separate lawsuit" some time in the future, after an adverse rulemaking or after an imminent hazard action. *Id.* Moreover, this case touches on legal issues intertwined with those Inhance may later be forced to litigate. "[I]t is not enough to deny intervention under 24(a)(2) because applicants may vindicate their interests in some later, albeit more burdensome, litigation." *Natural Res. Def. Council v. Costle*, 561 F.2d 904, 910 (D.C. Cir. 1977). It is sufficient that Inhance's "involvement may lessen the need for future litigation to protect [its] interests." *Costle*, 561 F.2d at 911.

**C. Existing Parties Cannot Adequately Represent Inhance's Interests.**

Would-be intervenors face a "minimal" burden to show that existing representation "may be" inadequate. *See Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972). Ordinarily, "governmental entities do not adequately represent the interests of aspiring intervenors." *Fund for Animals*, 322 F.3d at 736. This Court has explained: "A government entity . . . is charged by law with representing the public interest of its citizens," whereas industry intervenors may seek to protect "more narrow and 'parochial' " interests. *Id.* at 737 (quoting *Dimond v. District of Columbia*, 792 F.2d 179, 193 (D.C. Cir. 1986)).

Nothing in this case overcomes that presumption. PEER and CEH suggest that EPA can adequately represent Inhance's interests because Inhance "stands to benefit if the Court sides with EPA." Appellants' Opp. 9. But this Court has held many times over that "general alignment" is not the same as adequate representation. *Crossroads Grassroots Policy Strategies*, 788 F.3d at 321; *see Costle*, 561 F.2d at 912 (concluding that "shared general agreement" with EPA "does not necessarily ensure agreement in all particular respects"). In *Crossroads Grassroots Policy Strategies*, for example, this Court reasoned that FEC "could seek to regulate" the would-be intervenor after resolution of the case, so the intervenor "should not need to rely on a doubtful friend to represent its interests, when it can represent itself." 788 F.3d at 321.

Just so here. EPA has already been adverse to Inhance over this same issue. Although EPA's repeated attempts to ban Inhance's fluorination process have failed in the courts, it shows no sign of stopping. *See Certain PFAS Risk Management Under the TSCA; Request for Comment*, 89 Fed. Reg. 79,581 (Sept. 30, 2024) (seeking comment on whether to take regulatory action under TSCA Section 6). This litigation itself shows how the interests of EPA and Inhance diverge: The Government below made narrower arguments for dismissal, while Inhance's motion to dismiss advanced arguments about the scope of EPA's authority under TSCA Section 6 as well as PEER and CEH's claims under Section 7 that the Government declined to address at all. "Recognizing that doubtful friends may provide dubious representation," Inhance has exceeded its "minimal burden" to show inadequate representation. *Crossroads Grassroots Policy Strategies*, 788 F.3d at 314, 321.

### D. At Minimum, Permissive Intervention Is Appropriate.

Inhance is entitled to intervene as right, for all the reasons explained. Because Inhance also has established subject matter jurisdiction; brought a timely motion; and raises defenses that have questions of law or fact in common with those asserted by the Government, it should at minimum be allowed to intervene permissively. *See EEOC v. National Children's Ctr., Inc.*, 146 F.3d 1042, 1046 (D.C. Cir. 1998). PEER and CEH do not argue otherwise, and Inhance's arguments for permissive intervention (at Mot. 15–17) should be treated as conceded—assuming the untimely

opposition brief is considered.  *See Brisbon v. Tischner*, No. 23-5007, 2023 WL 5162363, at *1 (D.C. Cir. Aug. 9, 2023) (per curiam) (party forfeited argument "by failing to address it in opposition to the motion").

**CONCLUSION**

For the foregoing reasons, as well as those stated in its motion to intervene, Inhance's motion to intervene should be granted.  Upon intervention, Inhance would not object to the Court's dismissing as moot Inhance's parallel intervention appeal in D.C. Cir. No. 25-5015.

Respectfully submitted,

/s/ *Catherine E. Stetson*
Catherine E. Stetson (D.C. Bar No. 453221)
Susan M. Cook (D.C. Bar No. 462978)
Marlan Golden (D.C. Bar No. 1673073)
HOGAN LOVELLS US LLP
555 Thirteenth Street, NW
Washington, D.C. 20004
Phone: (202) 637-5600
Fax: (202) 637-5910
cate.stetson@hoganlovells.com

J. Tom Boer (D.C. Bar. No. 469585)
HOGAN LOVELLS US LLP
4 Embarcadero Center, Suite 3500
San Francisco, CA  94111
Phone: (415) 374-2336
Fax: (415) 374-2499
tom.boer@hoganlovells.com

Dated:	March 12, 2025	*Counsel for Inhance Technologies LLC*

# CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g)(1), the undersigned hereby certifies that this document complies with the type-volume limitation of Fed. R. App. P. 27(d)(2).

1. Exclusive of the exempted portions of the document, as provided in Fed. R. App. P. 32(f), this document contains 2,436 words.

2. The document has been prepared in proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font. As permitted by Fed. R. App. P. 32(g)(1), the undersigned has relied upon the word count feature of this word processing system in preparing this certificate.

March 12, 2025

/s/ *Catherine E. Stetson*
Catherine E. Stetson

**CERTIFICATE OF SERVICE**

I certify that on March 12, 2025, the foregoing was electronically filed through this Court's CM/ECF system, which will send a notice of filing to all registered users.

/s/ *Catherine E. Stetson*
Catherine E. Stetson
